Shulkin v. Shulkin Next case is number 16, 1946, Manzanares against the Secretary of Veterans Affairs, Mr. Carpenter. May it please the Court, Kenneth Carpenter appearing on behalf of Martha Manzanares. The Veterans Court in this case misinterpreted the provisions of 38 CFR 3.156B when it relied upon its own precedent in the Ross case. In the Ross case, 3.156B was not at issue. 3.3110 was at issue, as it is in this case. However, the decision in Ross was the reliance by the Veterans Court was misplaced because the only provision that related to effective date was the statutory provision. 3.156B is a regulatory provision that requires the VA to take specific action. This Court has on multiple occasions... The problem is that the secondary service connection claim is treated in Ellington as a separate claim. And if it's a separate claim, Ellington doesn't have to have the same effective date. Why isn't your argument consistent with Ellington? Because Ellington did not address the provisions of 3.156B, and in Ellington it was not part of a continuous appellate process. 3.156B deals with the one-year appeal period following an original decision and then during the pendency of an appeal. Ellington did not address that issue. In Ellington, the Court was confronted with whether or not 3.156B... But if the secondary service connection is a separate claim, as Ellington says it is, doesn't that defeat your argument? In the context of Ellington, it was a separate claim because there was no direct involvement of other claims pending, which is what 3.156B covers. 3.156B specifically addresses the required analysis when the VA receives new and material evidence. There should be a required examination under the provisions of 3.156B because the VA received new and material evidence, specifically whether or not there were additional disabilities resulting from Ms. Manzanares' service connected by a lateral ankle condition. That was part and parcel of the claim for increase because placing at issue the question of whether or not there was additional disabilities would have resulted in and ultimately did additional compensation to Ms. Manzanares. I'm not sure I understand what you just said about it being part and parcel of a claim for increase. Yes. If you get a secondary service condition claim, don't you get a separate rating? It doesn't increase the other claims rating, does it? Well, the plain language of 3.310 says that it will be rated as part of. The process that the VA adopts, in fact, is to rate that additional disability separately. But that's not an increase. But it is an increase, Your Honor, because you get more compensation. We've both been doing this a long time. The claim for increase is you have a disability and you have a rating and you think it's worsened and you want an increase. Correct. But it's not if you get another claim granted, whether it's secondary or not secondary, and that increases your overall rating. That's not a claim for increase. That's a claim. It's a new claim with a new rating, isn't it? No, it's not, Your Honor. It's a separate issue, just like the issue of extra scheduler total rating is an additional issue that must be dealt with when the facts are presented during the course of the appeal of the scheduler rating. Ms. Manzanares placed at issue the scheduler rating. She went from non-compensable to compensable and filed a notice of disagreement. So let me ask you this hypothetical. Suppose I have a 20% disability rating for a foot issue. And within a year, I say, oh, I have this other completely different issue with my hearing. And I'm going to file that and try to get the date back to the ankle, even though they're not secondarily connected. Wouldn't your argument that this is a claim for increase still invoke 3.156 under your theory? No, Your Honor. Because you'd be increasing the overall disability number. No, because the precise language of 3.156B that has been interpreted by this court is whether or not that new and material evidence relates back to the pending claim. A hearing claim would not relate back to the ankle claim or a foot claim in your hypothetical because they are not related. What is required by 3.156B and has been repeatedly affirmed by this court is that it is a required analysis. Because the VA has received during the pendency of either the appeal window, the one year following the original decision, or during the pendency of the appeal, that during that time, the VA receives new and material evidence and then is required to perform a specific assessment. The consequence, the only consequence, then, would be the retroactivity of the increase in compensation. That's correct. And whether or not it would relate to the request for increased compensation for, in this case, for bilateral ankle conditions as related to the secondary disability, which the VA found that they found was a separate claim that was independent of. And they, in fact, made an adverse finding by making that without doing the required assessment under 3.156B to determine whether or not, in fact, that new and material evidence received within the one year appeal period related back to her bilateral ankle condition. Your problem is that what 3.156B says, it says it will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period. That's correct. If they're two separate claims and the secondary service connection wasn't pending, then it doesn't relate back. But with respect, Your Honor, they are not two separate claims. That's the problem. But Ellington says they are. Ellington says. And also they're rated separately. If I can finish this one first. I know. I'm sorry. They were in Ellington because they were clearly distinguishable in time. These actions are not clearly distinguishable in time and implicate the provisions of 3.156B because of where they were presented in the process. As the Veterans Court found in Rice, it is inextricable, part and parcel of the same process, to deal with both scheduler and extra scheduler. Why? Because they relate to the overall compensation. When the issue of extra scheduler is raised, which can be raised as a separate claim, is raised during that process, it is a different analysis that is mandated by the VA's regulations. We should be interpreting this regulation, this court should be interpreting this regulation, as the liberal regulation that it is for the benefit of veterans. All we're talking about here is a year or a year and a half worth of additional effective date for a condition that the VA has conceded is related to the very disability that she was seeking additional compensation for. So it is in the context. We cannot simply rely upon Ellington in which the facts are clearly distinguishable that the claim for secondary is a separate claim. And I'm sorry, Judge Hughes, I forgot your question. Well, it's a separate claim because it's rated separately. Even, I think, what you're asking for under this process, you're still going to get one rating for the ankle and you're going to get a separate rating for whatever the secondary condition is. You're not going to get an increase in the ankle rating. No, I am not going to get an increase in the ankle rating. You have two claims. You have a claim for the ankle and you have a claim through the ankle for something else. And I think this is where the Rice case is very important for this Court to review. The Rice panel recognized the lack of imprecision that is used. And when we talk about claims, the claim here was for additional compensation. When she started this process, I believe in 2006, she had no compensation for her ankle. This is where I understand the logic of your argument, but I don't understand how you cabinet, then, if you view this as a claim for additional compensation, how you cabinet to include any additional compensation. As I hopefully responded to Judge Dyke's question, it is not a separate claim in this context. You're saying that secondary service connection claims are different and that they ought to be treated as part of the same claim as the original disability. When they arise in the context in which there is a pending claim for additional compensation, when it is raised independently, just like when TDIU is raised independently, that is and should be recognized by the agency as a separate claim. But when it happens within a claim stream, and clearly what we have here is an active claim stream, that that should be recognized as a separate issue in the question of is there an entitlement to additional compensation. The real problem is calling it secondary. You're saying this is all part of the primary, not secondary, and that there shouldn't be a bright line if it is the primary claim. But there are difficulties, are there not, with this distinction between a primary and a secondary claim that you say isn't secondary at all? Yes. But if it was part of the primary claim, you would be seeking an increase in the disability rating for that claim, not a different rating for the secondary claim. Not a different rating for the secondary. I'm not sure I know what you mean by that last phrase. Well, I thought you just said that the secondary condition claim is part of the primary condition claim. But if it's part of it, then it is an increase in that claim, not a separately rated claim. No, Your Honor, because the issue here is not increase. The issue here is effective date. When the date is effective for the award of additional secondary service-connected compensation for the back-related disability. And should it go back to when the pending claim began for when she attempted to move from non-compensable to compensable and then to secondary, and that it is the context in which this regulation provides for a specific affirmative requirement, which this Court has recognized, for the VA to do a specific assessment. Okay. Let's hear from the VA, Mr. Hockey. May I please, Court? How do we know when the later filed claim for somehow things have gotten worse is a secondary consideration or part of the primary claim all along? We begin with the first step of the three-part test for service connection that this Court has referred to by the name of the Veterans Court decision that I discussed it called CALUSA. And that first prong and the prong that everyone needs for any claim for veterans' benefits is a disability. A present disability. And that is really the basis of this Court's decision in Ellington when it distinguished between a primary and a secondary service connection claim. Because in a secondary service connection claim, unlike the primary service connection claim, you have two different disabilities, so there are two different claims. And even more significantly... But you're presuming there are different claims in different disabilities, and what we're asked is when the line isn't so clear as to what is now being called secondary is not a consequence of the primary or related to it. Well, with all due respect, I do think the line is clear. A secondary service connection claim by its nature is one that would not have occurred or wouldn't be a basis for benefits but for the existence of a primary service connection claim. Your problem here, I think, is with 3.310, which says when service connection is established for a secondary condition, the secondary condition shall be considered a part of the original condition. And if you read that together with 3.156B, there is an argument that for purposes of 156B, that the secondary service connection claim ought to be considered to be part of the primary claim. Right? There's an argument, and Ms. Manzanares has made that argument, ignoring that this Court in Ellington has already held that 3.310 cannot stand for that proposition when it comes to effective dates because it makes no logical sense. Yeah, but as Mr. Carpenter points out, it wasn't dealing with the 156B. 156B only implicates the duty of the VA to consider evidence which otherwise wouldn't be timely presented to the Board. This Court has struggled in numerous cases over the years, the DAV being one with respect to late submitted evidence before the Board. And 3.156B simply says if the evidence comes in to the Board relating to the claim that's pending before the Board, any time within the expiration of the appeal period, that evidence must be reconsidered by the VA, and to the extent an award based upon the claim pending is granted, then the claimant gets the benefit of the effective date of the claim that started the whole process. But what we're explaining here... What is the point of 3.310? What role does that play in adjudication of veterans' benefits? I think it has to do with basically... totality of the disabilities going forward. I don't understand what that means. Because it doesn't affect effective dates. Because the premise... In Ellington, this Court accepted the idea that a secondary service connection claim is different than a primary service connection. Well, I understand that it may not affect effective dates, but 3.310 must have some purpose. And the purpose would seem to be that for some purposes you would consider the secondary service connection claim to be part of the primary claim. And the question is, if not for purposes of 156B, then for what purpose? What is the role of this other provision? I can address that in a supplemental briefing, but standing here today, I would suspect it has to do with ratings and not effective dates. I'm sorry, what does that mean? Well, when you're considering the overall rating for an individual, it's suggesting that... although there are other regulations that deal with that, but it would be speculation that it has to deal with ratings. Because it can't deal with effective dates, and it doesn't get implicated until after service connection. So of the five potential prongs, disabilities, in-service event, nexus, rating and effective date, the only one that appears to be implicated is rating. The reason there are different claims, Your Honor, is because the in-service prong for a secondary service connection isn't an actual in-service event or injury, like it would be for a primary. It's the existence of the primary. In other words, when someone comes in with a secondary service connection, as is implicated in this Court's decision in Ellington, the argument about the relationship to service isn't that someone was injured, they jumped out of an airplane, or they developed a disease. It's that the injury that's already been service-connected, the primary service connection, resulted in a secondary injury or disease, or disability, I should say, that wouldn't have existed but for the primary. And Ms. Manzanera's case is a perfect example, where she was service-connected in 1992 for ankles. And in 2006-2007, she complained about it back, and suggested that the reason her back had developed its disability was because of the ankle injury. She didn't suggest that she had a back injury because of some service event like she had with respect to her ankles. So this leads us to the point where, like this Court suggested in Ellington, you cannot treat those two primary and secondary service connection claims for purposes of effective dates the same, as 3.310 would suggest. The question I was asking before, as to what the purpose of 3.310 is, it would be helpful to me, Judge Nimmin, if we had a short supplemental briefing on that point. Yes, I think it would indeed be helpful. We will do that. But our argument remains that it cannot be for purposes of the effective date. One, this Court's already found that to be the case. But two, it doesn't make intuitive sense that someone could obtain benefits at a time when they weren't disabled. Now, even accepting Ms. Manzanera's theory that she was discussing earlier about in this case, there was only maybe a year or a year and a half from the time that she submitted her claim for an increase for ankles and the time she submitted a claim for secondary service connection. That doesn't answer the question. If there's no disability at the time of the original claim, there cannot be under 5110A a basis for finding facts found on the existence of a disability when none exists. You need to have the disability in order to obtain the service connection benefits. And that's the logic that's identified in Ellington that's not answered in this case, notwithstanding the existence of 3.156B. 3.156B may impose a duty on the VA when reviewing the claim to consider evidence that's submitted after the certification of the record to the board, and to the extent that goes back to the original pending claim, as the plain language of 3.156B says. Pending claim. In 2006, there was no claim for a back disability. There was a claim for an ankle disability. So under the plain language of 3.156B, evidence that came in during that time period related to a different disability does not implicate 3.156B. So there isn't any basis to concern them. There's no dueling regulations that are inconsistent with each other. It has to be based on the claim pending at the time of the original appeal to the board. We don't have that here. The claim that was provided later was one for a secondary service connection that was based on a different disability, which required a different analysis. Not only is the disability different, the whole analysis is different. Your in-service prong is not to an event or disease. It's to the primary disability. The nexus has to be connecting that to the primary disability. It's a wholly separate analysis that takes place. It's a different claim under the way VA looks at claims. So 3.156B is not implicated. 3.310 could be implicated. But this court held in Ellington that to come up with a per se rule with respect to effective dates being implicated when 3.310 refers to original claim doesn't make sense. And we submit that this case doesn't provide an exception to that. It doesn't make sense to obtain disability benefits for a time period in which you don't have, or at least the facts can't establish that you have a disability. So if, in fact, it looks as if what has occurred with time that we're calling a secondary disability is in fact part of the primary disability, then how does the veteran proceed? So, well, hypothetically, if I'm understanding Your Honor's question, let's... I'm trying to understand whether there really is a bright line that we should draw and sustain when there is a later claim because the consequences of the primary disability have become more manifest. Where this might work would be in a live claim situation. Well, it would still be dependent on the facts found, but let's say hypothetically... That's my concern. It's dependent on the facts found, and yet we're saying that once you somehow attach the tag secondary to it, there are no more facts to be found. So in a live claim hypothetical where the individual perhaps has, and this could be implicated through the citation in the reply brief to 3.155, the duty on the VA to try to find all facets of the claim in ancillary benefits and whatnot. So somebody comes in with an ankle claim. It hasn't been service-connected, but there's also evidence of a back disability, but they don't ask for it at the time. So the VA begins the analysis, and this is a live claim, and determines that, in fact, the ankles were damaged from service. But they also find out that there's a back disability, and they can figure out that that back disability is also attributable to service. In that situation, although the back disability is attributable to the ankle disability, because that's a live claim, and the VA has determined that both of them have a service-connection component, albeit the back is through the ankles, but that the evidence also supports the finding of service connection for effective date purposes for the secondary claim to go back to the original claim, even though it wasn't claimed, then in that situation you could have an effective date where both primary and secondary service-connection claims would share the same effective date. In Ellington, the reason that didn't happen is because there was a break. There was a claim which was awarded for primary, and then years went by, and then there was another claim for secondary. And you couldn't leap back for effective date purposes to connect the secondary claim to the primary claim. But I'm not sure that Mr. Carpenter's argument would take us to that point where there was an inconsistency with the result in Ellington. I understand your point, and it's one that's made in Ellington, that a secondary service-connection condition may come years after the primary service-connection and that the two don't necessarily have the same effective date. But I wonder whether his reading of 3.156B really leads to that conclusion, because all it says is that, under his reading, that if you have evidence of secondary service-connection, it will be considered in connection with the original claim. If the secondary service-connection evidence shows that the condition came afterwards, the consideration of that evidence wouldn't lead you to the conclusion that they had the same effective date. So I don't know whether I'm making myself clear, but it seems to me that his argument doesn't necessarily take you to the point where, as a result of considering the evidence to be part of the original claim, that you would necessarily say that they had the same effective date because the secondary service-connection condition might have arisen later. It's clear that Ms. Manzanares has a better argument than did Mr. Ellington because of the lack of the separation and that the secondary service-connection claim was made during a time in which Ms. Manzanares had a claim pending. It wasn't a new claim, though. It was a claim to reopen an old claim. And new and material evidence is always going to be geared toward examining what was that old claim. This was sort of the one point we made in our briefs. New and material evidence is the standard you meet in order to reopen a finally decided claim. Do you agree that his argument doesn't necessarily take us to the point where the primary and secondary would have the same effective date? I think that is his argument, that because of the happenstance of the new claim being filed while he had an old claim pending. But only if it's brought within the one year provided by 3.156. Right, but that's what we're saying is that it's the happenstance of the timing that otherwise allows him to avoid the implications of Ellington. He identifies, or she, Ms. Manzanares, identifies a procedural vehicle, allegedly, 3.156B. So within one year, secondary can be considered part of the same claim after one year at Kant under Ellington. I don't think Ellington speaks in terms of years. I think that Ellington makes the broad. I'm sorry. That's at least the gist of his argument, isn't it? That could be viewed as the gist, but it doesn't need to be limited to one year because you could have a hypothetical in which someone's new and material evidence claim is pending over a number of years, five years. So they keep submitting new and material evidence, and it keeps getting rejected. And then at some point during that process, a claim for secondary service connection is made. And using the 3.156B theory, that individual could end up getting benefits for a five-year period in which there was no existence of a secondary service connection disability. I'll ask him, but I'm not sure that his argument takes him that far. I'm not sure I've heard a limitation yet, Your Honor. I've heard the argument that the reason Ellington doesn't apply is because of 3.156, and that has to do with the happenstance that he had a pending new and material evidence claim. But I think the argument would be that that simply means that you consider the evidence as to secondary service connection in connection with the original claim. If the secondary condition arose later, it would have a different effective date. And I don't think he's saying that 156B necessarily means that it has the same effective date if it's a later arising condition. There are two different claims. I think that's getting lost here. Well, that's the question. And the question is whether, I mean, certainly you have a very good argument based on the face of 156B, that they're two separate claims. Perhaps the problem is what does 3.310 mean? That's, to me, that's the troubling issue. Yes, and we would at this stage, pending supplemental response, suggest that this Court has addressed the implications of 3.310 vis-à-vis effective dates and determined that they aren't, that you don't have a rule, at least a per se rule, that the effective dates would be the same. And we don't feel that 3.156B is the vehicle by which one can somehow make a disability exist at a time when the evidence suggests it does not. Fundamentally, you get service connection for disabilities. If you don't have a disability, you don't obtain VA benefits. And so whether or not Ms. Manzanares, I mean, just trying to take these facts, the claim for the secondary service connection was made in April of 2007. And let's assume that at that date, that was the first time the disability existed. Then that, according to facts found, would be when you get your benefits. There are certain look-back provisions, including implied claims, which was rejected by the Veterans Courts here. But here we believe that this Court should follow the guidance of Ellington and not find that 3.156B is a way around it. Okay, thank you, Mr. Hockey. Mr. Carpenter? If I could clarify— Do you agree that— If I could just get a clarification on the supplemental briefing first, Your Honor. Do you want to hear from me, or are you only asking to hear from the government? I'm happy to provide my own supplemental briefing, but I wasn't sure from the order. Well, I thought after we heard your argument, I would invite Judge Dyke to tell us precisely the area in which supplemental briefing would be helpful. Okay. Does that make sense? Yeah, sure. Okay. But could I understand how far your argument takes you? Because I think Mr. Hockey says correctly that it cannot be that 3.156B gives you an earlier effective date before the secondary service condition arose. It existed. Absolutely, Your Honor. Right, so if that were the situation, considering the evidence together with the original claim wouldn't give you an effective date that would be the same as the primary service condition, right? That would be correct. However, what is overlooked by Mr. Hockey in his argument is the mandate that this Court has found that exists in 3.156B to do that very assessment, to decide whether it does or doesn't relate to the ankle disabilities, and if it does, when did it? From the date of the claim to the date of the application. I think if you just look at 156B, you've got a hard row to hoe. That language doesn't help you all that much. Unless you can say that 3.310 treats them as the same claim for some purpose and that one of the purposes is for 156B, then it seems to me you've got a difficult situation. Well, Your Honor, I do not believe it's a difficult situation because I think the language of 3.310 is clear. That the intention of the Secretary's creation of this regulation, and it's critically important for this Court to keep in mind that there is no statutory predicate for 3.310. The Secretary did this under his 511 authority to write regulations. He wrote this regulation with the specific language that a secondary condition that was discovered after service to be related to a service-connected disability is entitled to be treated as part of the primary service-connected condition. I thought the purpose of that, and I agree if that's the language, is so that it makes clear that the secondary service-connected disability has a service connection via the first disability, but not to do with effective dates. Let me just finish. I think we agree that 3.310 definitely, that one point of it is to establish the service connection because you need a service connection for secondary-connected disabilities and they may arise well after service, so they don't have any direct one. But isn't that what 3.310 is about? It may be about what else you say about effective dates, but isn't that at least one of the bases for it? I believe that that is the precise basis for it, but I think that the discussion of effective date is a distraction. Ellington is about effective date. This case is about the application of 3.156B when the VA receives new and material evidence. Contrary to Mr. Hockey's suggestion, 3.156 contains three separate positions. Only 3.156A relates to new and material evidence for the purpose of reopening. 3.156B deals with a pending claim, and if this pending claim is about Mrs. Manzanares' bilateral ankle condition, that necessarily is part and parcel of whether or not she has an additional disability to her back. The question of how it relates is whether or not under 3.156B that disability existed in that window. It certainly cannot go back before the date of the claim. I concede. But from the date of the claim to the date in which she submitted that new and material evidence, the date upon which 3.156B was triggered, that is the window in which the VA is required to make its assessment. So this case is not about effective date, even though that is the result. The same applies with 3.156C. Both of those provisions are just like 3.310, provisions that were written by the Secretary that have no statutory predicate. They are liberal provisions that are intended to assist the veteran in getting the maximum benefit for all of the disabilities that result from an injury or disease that was incurred in service. Unless there's further questions from the panel. I'm still a little confused as to whether I'm... In the supplemental briefing, tell counsel what would be helpful. I think what I'm suggesting is both sides address this issue, say no more than three pages, say 10 days from now, and the issue is what's the history and purpose of 3.310 and how does it relate to 3.156B. That's right. Okay, does that assist you both? Three pages are preferable if you run over slightly, that's okay. All right, thank you. Thank you both. The case is taken under submission.